IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

QUINTON WHEELER,

      Plaintiff,

v.                                                                Civil Action No. 1:08cv206
                                                               (Judge Keeley)

HARLEY G. LAPPIN, JOE DRIVER,
JEFF BOYLES, JORGES VAZQUEZ,
A. PELLOTHEODOROS,

      Defendants.

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on October 30, 2008, by filing a civil rights complaint against the above-named defendants. In the complaint, the plaintiff asserts that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[1]

On December 16, 2008, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $12.44. The plaintiff paid his initial partial fee on January 9, 2009. Consequently, on January 12, 2009, the undersigned conducted a preliminary review of the complaint and determined that it did not appear possible that the plaintiff could have exhausted his administrative remedies prior to filing suit. In so finding, the undersigned noted that the incidents

---

[1] Specifically, the plaintiff asserts that Dr. Vazquez performed surgery on his right hand on August 6, 2008. Petition at 4. Although pieces of flesh were cut from one of his fingers, and the plaintiff suffered swelling and pain in the finger, he asserts that the only follow-up care he received was a change of bandages that he had to request. Id. In addition, the plaintiff asserts that on September 4, 2008, defendant Pellotheodores refused the plaintiff's request to go on a scheduled medical trip "outside." Id. at 5-6. Moreover, the plaintiff asserts that defendant Pellotheodores canceled the plaintiff's appointment by signing a refusal of treatment form stating that the plaintiff did not want the treatment. Id. at 6.

of which the plaintiff complains occurred between August 6, 2008 and September 4, 2008, less than three month from the filing of the complaint. Accordingly, the plaintiff was directed to file proof of exhaustion.

On January 20, 2009, the plaintiff filed a response to the Court's Order. Attached to that response is what plaintiff purports is proof of exhaustion. This case is before the undersigned to determine whether the plaintiff exhausted his administrative remedies prior to filing suit.

## II. **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S.81 (2006) (recognizing the PLRA provisions contain a procedural default component).

In addition, although the exhaustion of administrative remedies should generally be raised by the defendant as an affirmative defense, Jones v. Bock, 549 U.S. 199 (2007), the court is not

---

[2] Id.

foreclosed from dismissing a case *sua sponte* on exhaustion grounds if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005).

### III. Analysis

The Bureau of Prisons ("BOP") makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

According to the plaintiff's grievances, on August 12, 2008, he filed an informal remedy with staff regarding the lack of follow-up care he received on his right hand after his operation on August 6, 2008. See Dckt. 25, Exhibits. In response, staff stated that the plaintiff had been seen for a follow-up appointment on August 12, 2008, and no problems were detected. Id. Moreover, the plaintiff was advised that he was being scheduled for further follow-up care in the near future. Id.

Not satisfied with that response, the plaintiff filed a formal remedy with the Warden on August 26, 2008. Id. The plaintiff does not provide the Court with a copy of the Warden's response, but the Court presumes the plaintiff's formal remedy was denied because the plaintiff filed

an appeal to the Regional Office on September 14, 2008.  Id.  In his appeal, the plaintiff complained of the lack of follow-up care on his right hand, and also, that defendant Pellotheodores refused to allow him to attend a medical appointment and signed a medical refusal form without the plaintiff being present.  Id.  The plaintiff received a receipt from the Regional Office stating that it had received the plaintiff's appeal on September 22, 2008, and that a response was due October 22, 2008.  Id.  After not receiving a timely response from the Regional Office, the plaintiff filed an appeal to the Central Office on November 12, 2008.  Id.

Accordingly, on the date this case was filed, the plaintiff's regional appeal was still pending[3] and he had yet to file an appeal with the Central Office.  Thus, the plaintiff had clearly not exhausted his administrative remedies prior to filing suit and this case was prematurely filed.

## IV.  Recommendation

For the foregoing reasons, the undersigned recommends that the plaintiff's complaint (dckt. 1) be **DISMISSED without prejudice** from the active docket of this Court for the failure to exhaust administrative remedies.  Consequently, because the plaintiff has no chance of success on the merits of his claims at this time, his Motion for Preliminary Injunction (dckt. 4) should be **DENIED**.[4]

---

[3] Pursuant to 28 C.F.R. § 542.18, the Regional Director has 30 days from the date the appeal is logged to consider the request.  If that time period is insufficient to make an appropriate decision, the response time may be extended an additional 30 days at the regional level.  If an extension is needed, the inmate receives written notification of an extension.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response as a denial and then move on to the next level.  Thus, although the regional office had not responded to the plaintiff's appeal within 30 days of receipt, the time for an extension had not passed, and the appeal was not yet deemed denied when the plaintiff filed his appeal to the Central Office on November 12, 2008.

[4] The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).  In making this analysis, the Court must consider the following four factors:
      (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
      (2) the likelihood of harm to the defendant if the requested relief is granted,
      (3) the likelihood that the plaintiff will succeed on the merits, and

Additionally, the undersigned also recommends that the plaintiff's Motion to Supplement his Claim (dckt. 22) be **DENIED**. In that motion, the plaintiff seeks to amend his complaint to include a Fifth Amendment Due Process claim with regard to the failure of the BOP to timely respond to his administrative grievances. However, even if the BOP unnecessarily delayed its response to the plaintiff's administrative remedies, or hindered the plaintiff's participation in the administrative remedy process, the plaintiff's exhibits show that any such delay or hindrance occurred at the regional level or beyond. Therefore, any violation of the plaintiff's Fifth Amendment rights occurred after the filing of this case and does not save the plaintiff's case from summary dismissal for being prematurely filed.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. §

---

(4) the public interest.
Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff.

DATED: February 24, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE